IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| YERSON MAURICIO-VASQUEZ, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> JERRY CRAWFORD, *et al.*, ) <br> ) <br> Respondents. ) <br> _____) | Civil Action No. 1:16cv01422 (AJT/TCB) |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is Petitioner Yerson Mauricio-Vasquez's Petition for a Writ of Habeas Corpus (the "Petition") [Doc. No. 1]. Petitioner, in the custody of Immigration and Customs Enforcement ("ICE") for approximately fifteen months, has filed a Petition for a Writ of Habeas Corpus [Doc. No. 1] (the "Petition") arguing that his continued detention pursuant to 8 U.S.C. § 1226(c) ("Section 1226(c)") without an individualized bond hearing is unlawful. On August 8, 2016, an immigration judge ("IJ") issued a written opinion finding Petitioner removable. Petitioner and ICE each appealed that decision to the Board of Immigration Appeals ("BIA") on different grounds on September 7, 2016. On January 19, 2017, the BIA remanded to the IJ to conduct further fact-finding proceedings and held in abeyance the issue of whether the government had satisfied its burden of proving removability.

For the reasons that follow, the Court finds that Petitioner's continued detention without an individualized bond hearing is unlawful, and it therefore GRANTS Petitioner's Writ of Habeas Corpus.

# I. BACKGROUND

Petitioner Yerson Mauricio-Vasquez ("Mauricio-Vasquez") is a native and citizen of Peru. He entered the United States in February 2002 and was granted adjustment of status to Lawful Permanent Resident ("LPR") on May 16, 2008, as derivative of his father. Mauricio-Vasquez's parents and sister all reside in the United States and are United States citizens. Mauricio-Vasquez also has a three-year-old son who was born in the United States and is therefore a U.S. citizen. That son lives with his mother who is also Petitioner's partner, Sandra Ramirez Mata.

On or about September 13, 2002, approximately seven months after entering the United States, Petitioner was arrested for the felony offense of abduction in violation of Virginia Code § 18.2-47 and two counts of assault in violation of Virginia Code § 18.2-57. On April 9, 2013, Petitioner was tried on all counts and was convicted of the abduction charge and one of the two counts of assault. On July 19, 2013, he was sentenced to three years' incarceration on the abduction charge. While serving his sentence, ICE issued Mauricio-Vasquez a notice to appear ("NTA") on August 9, 2015, charging him as a removable alien convicted of an aggravated felony pursuant to INA § 237(a)(2)(A)(iii) on the basis that he had committed a crime of violence under INA § 101(a)(43)(F). On January 21, 2016, when Petitioner was released from prison, he was transferred to ICE custody and has been held in ICE custody ever since.

On January 26, 2016, ICE filed the NTA with the immigration court in Arlington, Virginia, thereby initiating removal proceedings, and, on February 25, 2016, Petitioner appeared via televideo for his initial master calendar hearing before the Arlington Immigration Court. At that time, Petitioner sought a bond redetermination but was informed by the IJ that he was ineligible given his conviction of an aggravated felony. From January through March, Petitioner

appeared for two additional master calendar hearings while counsel was sought and obtained on his behalf. Then, on April 21, 2016, ICE filed a Form I-261 adding an additional charge of removability under INA § 237(a)(2)(A)(i) based on Petitioner's alleged status as an alien convicted of a crime involving moral turpitude committed within five years of the date of admission and for which a sentence of one year or longer may be imposed (the "crime of moral turpitude charge").

On August 8, 2016, the immigration judge issued a written opinion which (1) denied Petitioner's motion to terminate removal proceedings; (2) found that the conviction for felony abduction was a crime of violence under INA § 101(a)(43)(F); and (3) dismissed the crime of moral turpitude charge under INA § 237(a)(2)(A)(i). Ultimately, the IJ therefore sustained the INA § 237(a)(2)(A)(iii) charge of removability and ordered Petitioner removed to Peru. The parties were given 30 days to file an appeal. On September 7, 2016, Petitioner appealed the finding of conviction of a crime of violence and removability, and ICE then appealed the dismissal of the crime of moral turpitude charge.

While the appeal was pending before the BIA, Mauricio-Vasquez filed this Petition on November 14, 2016 [Doc. No. 1], and the Court ordered the Respondents to show cause why the writ should not be granted on November 18, 2016 [Doc. No. 8]. On January 24, 2017, the Respondents filed a notice with the Court informing it that on January 19, 2017, the BIA remanded the case to the IJ to conduct further fact-finding concerning the issue of whether Petitioner committed a crime involving moral turpitude and deferred ruling on whether Petitioner had committed an aggravated felony and, therefore, on whether Petitioner is removable. [Doc. No. 20.] Petitioner then filed a supplemental brief concerning the BIA's decision on January 25, 2017. [Doc. No. 21.]

## II. ANALYSIS

### A. Whether Section 1226(c) Contains an Implicit Reasonableness Clause

The language of Section 1226(c) contains no explicit limitation to the time ICE may detain an alien without an individualized bond hearing. It states that "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." Section 1226(c)(1)(B). The Attorney General "may release" any such alien if "necessary to provide protection to a witness" or similarly situated individuals. Section 1226(c)(2). Nevertheless, given the Fifth Amendment right to due process of law, Petitioner argues that the time of detention prescribed by Section 1226(c) should be limited to a reasonable duration, which Petitioner suggests is six months. Respondent disputes that there should be any categorical limit whatsoever on the time the government can hold a removable alien pursuant to Section 1226(c). The dispute centers on the meaning of two critical Supreme Court cases.

In *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001), a case on which Petitioner largely relies, the Supreme Court held that 8 U.S.C. § 1231(a) ("Section 1231(a)"),[1] the post-removal statute, "contain[s] an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." The Court expanded on its holding, reasoning that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. . . . A statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 689-90. "[F]or the sake of uniform administration in the federal courts," the Court determined that after

---

[1] Section 1231(a) reads, "If the alien does not leave or is not removed within the [ninety day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. §1231(a)(3).

4

six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

In *Demore v. Kim*, 538 U.S. 510 (2003), a case on which Respondent largely relies, the Supreme Court interpreted Section 1226(c)—the statute at issue in this case—and held that "Congress . . . may require that persons . . . be detained for the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513. The Court relied in part on statistic that showed that "more than 20% of deportable criminal aliens failed to appear for their removal hearings." *Id.* 519. The Court distinguished *Zadvydas* in two critical ways: (1) "in *Zadvydas*, the aliens challenging their detention following final orders of deportation were ones for whom removal was 'no longer practically attainable,'" *id.* at 527; and (2) "[w]hile the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent . . . the detention here is of a much shorter duration," *id.* at 528. Specifically, the Court relied in part on government proffered evidence that under Section 1226(c), "in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*."[2] *Id.* at 529. Justice Kennedy supplied the fifth vote for the Court's majority and noted in his concurring opinion that "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."[3] *Id.* at 532 (Kennedy, J., concurring).

---

[2] The specific average case processing times proffered to the Court by the Executive Office of Immigration Review in advance of *Demore* turned out to be inaccurate, however. Thirteen years after that decision, in August 2016, the Office of the Solicitor General wrote a letter to the Clerk of the Supreme Court notifying him that the data that the government previously provided contained "several significant errors." *See* Resp.'s Mem., Ex. H. However, the actual average times were still under the ninety days in the statement that the Supreme Court made in *Demore*.
[3] Specifically Justice Kennedy noted that, "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33 (Kennedy, J., concurring). No other justices joined Justice Kennedy's opinion.

In light of this precedent, Petitioner argues that *Zadvydas* should guide this Court because the text of Section 1231(a) is very similar to that of Section 1226(c), *see supra*, and the Supreme Court found that Section 1231(a) contains a reasonableness clause. According to Petitioner, *Demore* is not in conflict with this result because the Court's holding in *Demore* was based on a presumption of detention of fewer than ninety days, which turned out to be based on incorrect information provided by the government and is refuted by the practical experience of detained aliens like Petitioner here. In many cases, as in Petitioner's, detention has lasted for more than a year. Respondent, however, argues that the critical distinction between these two cases is that *Zadvydas* dealt with post-removal detention, whereas *Demore* dealt with pre-removal detention. Respondent claims the rule is that, once a final order has issued, an alien must be given a bond hearing within six months of detention, but before a final order has issued, an alien may be held indefinitely without any bond hearing whatsoever.[4] In this case, the IJ's order of removal has not become final because the appeal is still pending before the BIA.

While the Fourth Circuit has not dealt with any due process challenges to Section 1226(c), each of the six federal courts of appeals to do so, as well as this Court, has recognized that the Due Process Clause imposes some form of a "reasonableness" limitation upon the duration detention can be considered justifiable under the statute.[5] In that regard, the brevity of

---

[4] Respondent's position in this case differs slightly from that taken in the pending Supreme Court case of *Jennings v. Rodriguez*, in which the Acting Solicitor General concedes that "[t]he proper avenue for presenting a claim that detention under Section 1226(c) has become impermissibly prolonged is . . . through an as-applied constitutional challenge in an individual habeas corpus proceeding. . . . [B]ecause longer detention imposes a greater imposition on an individual, as the passage of time increases a court may scrutinize fit between" detention and the purposes of mandatory detention "more closely." Opening Brief at 46-47, available at http://www.scotusblog.com/wp-content/uploads/2016/09/15-1204-petitioner-merits-brief.pdf. Although Respondent allows for the possibility of as-applied constitutional challenges, it remains unclear to the Court under what set of facts Respondent would find such a challenge appropriate if not on that set of facts presented by the present case.

[5] *See Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015); *Rodriguez v. Robbins,* 715 F.3d 1127 (9th Cir. 2013), *cert. granted*, --- S.Ct. ---, 2016 WL 1182403 (June 20, 2016) (No. 15-1204); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 230-33 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003); *Valle v. Munroe*, No. 1:16-cv-1428 (AJT/TCB), ECF No. 18 (E.D. Va. Jan. 19, 2017) (Trenga, J.); *Haughton v. Crawford*, No. 1:16-cv-634 (LMB/IDD), 2016 WL

the detention anticipated under Section 1226(c) was crucial to the Supreme Court's holding that such detention did not violate Due Process on the facts presented in *Demore*, and in his concurring opinion, Justice Kennedy left open the possibility in his concurring opinion that a "unreasonable or unjustified" detention might present a constitutional issue. As immigration courts have been inundated with cases and their dockets have become significantly backlogged since *Demore* was decided in 2003, that exact constitutional issue has now arisen. The Court therefore finds that, under *Zadvydas*, an alien detained under Section 1226(c) has a right to an individualized bond hearing once that detention becomes unreasonable. The Court declines to adopt a bright-line six-month rule, as Petitioner seeks, however.[6]

### B. Whether Petitioner's Detention Without a Bond Hearing is Unreasonable

In *Haughton v. Crawford*, No. 1:16-cv-634 (LMB/IDD), 2016 WL 5899285, at *8 (E.D. Va. Oct. 7, 2016) (Brinkema, J.), this Court outlined six factors that it considered in determining whether continued detention without an individualized bond hearing was reasonable:

> (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings . . . ; (2) whether the civil detention exceeds the criminal detention for the underlying offense . . .; (3) dilatory tactics employed in bad faith by the parties or adjudicators . . .; (4) procedural or substantive legal errors that significantly extend the duration of detention . . .; and (5) the likelihood that the government will secure a final removal order . . . .

The Court has applied those factors to this case and finds that Petitioner's continued detention without a bond hearing is unreasonable. The facts of this case are nearly indistinguishable from the cases of *Valle v. Munroe*, No. 1:16-cv-1428 (AJT/TCB), ECF No. 18 (E.D. Va. Jan. 19, 2017) (Trenga, J.) and also of *Haughton* itself, in both of which cases this

---

5899285 (E.D. Va. Oct. 7, 2016) (Brinkema, J.). Some older opinions of this Court previously dismissed similar claims based on the Supreme Court's decision in *Demore*, but those opinions weigh less on the Court today in light of the six appellate courts to have now narrowly construed *Demore*, as well as the growing evidence that detention proceedings take longer to conclude than previously suspected.

[6] Because the Court decides that Section 1226(c) contains an implicit reasonableness limitation, it need not decide whether or not Petitioner's "substantial challenge" to the charge of removability removes him from the category of aliens detained pursuant to Section 1226(c).

Court found continued detention without a bond hearing was unreasonable. This Court has already recognized that "[t]he first factor, duration, is the most important." *Haughton*, 2016 WL 5899285, at *9. Here, Petitioner has been denied a bond hearing for fifteen months—far more than the ninety-day mark of *Demore*, more than the twelve months of *Haughton*, and approximately the same as the fifteen months of *Valle*. As to the second factor, while the fifteen months here do not exceed the three years of criminal detention Petitioner served for the underlying offense, it is already nearly half that time and so is therefore substantial and more than the approximately one third of the time the petitioner had served in *Haughton*.

Concerning the third and fourth factors, there are no allegations here that dilatory tactics were employed by either of the parties so that factor does not favor a finding of unreasonableness. Furthermore, error in proceedings does not provide any guidance, as both the Petitioner and the Respondent exercised their rights of appeal of the IJ's opinion in this case. The BIA has not thus far reversed the IJ in any part of his opinion, and this Court is not in a position to judge the IJ's decision or the BIA's remand.

Finally, the fifth factor (likelihood of ultimate removal) does not provide any guidance to the Court in this case. After the IJ's opinion was appealed to the BIA, the BIA remanded to the IJ to make further findings of fact. It is purely speculative to say what the IJ will do; however, it does appear to the Court that the proceedings before the IJ and the BIA make take significantly longer to conclude. Once the IJ makes his or her findings of fact, the BIA will then once again have to consider both parties' appeals, which it previously stayed. It therefore appears likely that Petitioner will remained detained significantly longer without any bond hearing if this Court does not grant his Petition now.

The Court therefore finds that, overall, the five factors weigh in favor of a finding that Petitioner's continued detention without a bond hearing is unreasonable, and he is therefore entitled to an individualized bond hearing at this time.

### C. What Standard Should be Applied at Petitioner's Bond Hearing

At an individualized bond hearing for non-criminal aliens detained pursuant to 8 U.S.C. § 1226(a), the burden of proof is on the alien to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8); *see also In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner asks the Court to impose the same standard set by the Ninth Circuit in *Rodriguez v. Robbins*: "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." 715 F.3d 1127, 1135 (9th Cir. 2013), *cert. granted*, --- S.Ct. ---, 2016 WL 1182403 (June 20, 2016) (No. 15-1204) (internal quotation marks omitted) (citation omitted). So far, two courts of appeals to reach this question have deferred to existing bond regulations,[7] and three courts of appeals have determined that the burden of proof should be placed on the government.[8] In *Valle*, this Court deferred to existing regulations placing the burden on the petitioner,[9] but in *Haughton*, decided that the burden of proof should be on the government.[10] The sixth court of appeals to consider the matter did not explicitly state a standard.[11]

Petitioner contends that the burden should be on the government because the constitutional right of due process is at stake, and in circumstances where individual liberty is at

---

[7] *See Sopo*, 825 F.3d at 1219 (11th Cir.); *Reid*, 819 F.3d 486 (1st Cir. 2016).
[8] *See Lora*, 804 F.3d at 605 (2d Cir.); *Rodriguez*, 804 F.3d at 1087 (9th Cir.); *Diop*, 656 F.3d at 235 (3d Cir.).
[9] *See Valle v. Munroe*, No. 1:16-cv-1428 (AJT/TCB), ECF No. 18 (E.D. Va. Jan. 19, 2017) (Trenga, J.)
[10] *See Haughton*, 2016 WL 5899285, at *10. In this case, however, the parties had not briefed the issue of the proper burden or standard of proof to be applied and no court of appeals had apparently yet decided to apply the same standard as in non-criminal alien proceedings. Therefore, the court appears to have been following the only circuit court precedent established at the time that case was decided. *See id.* at *9.
[11] *See Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003).

9

stake, the government generally faces a heightened burden of proof in civil proceedings. Respondents argues that federal courts should be reluctant to formulate new standards from scratch and should instead defer to the agency's preexisting rules and regulations. Respondents also contends that "there is no justification for treating criminal aliens . . . who Congress intended to be mandatorily detained, more favorably than non-criminal aliens, who are not subject to mandatory detention and are subject to existing bond regulations." *See* Resp.'s Mem. 29-30.

The Court finds that there is a strong interest in consistency in applying the same standard to criminal aliens as to non-criminal aliens, and the Petitioner has not demonstrated why a criminal alien should be treated more deferentially than a non-criminal alien. It is also not the place of a federal court to craft a new standard, and this Court will therefore instead defer to the agency's existing regulations in this regard. Therefore, at Mauricio-Vasquez's individualized bond hearing, he will bear the burden to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

## IV. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Petitioner's Petition [Doc. No. 1] be, and the same hereby is, GRANTED; and it is further

ORDERED that Immigrations and Customs Enforcement hold an individualized bond hearing for Petitioner no later than thirty (30) days after the date of this order, subject to the same burden and standard of proof as the agency would apply in a bond hearing for an alien detained pursuant to 8 U.S.C. § 1226(a).

10

The Clerk is directed to forward a copy of this Order to all counsel of record and to enter judgement in favor of the Petitioner under Federal Rule of Civil Procedure 58.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 24, 2017